**No. 25-20428**

---

## UNITED STATES COURT OF APPEALS
### FOR THE
### FIFTH CIRCUIT

---

FRONTIER CUSTOM BUILDERS, INC.                    PLAINTIFF/APPELLANT

V.

KINSALE INSURANCE COMPANY                    DEFENDANT/ APPELLEE

---

**On Appeal from the United States District Court for the Southern District of Texas, Houston Division, 4:24-CV-00832**
**Honorable Kenneth M. Hoyt, Judge**

---

### APPELLANT FRONTIER CUSTOM BUILDERS, INC.'S
### OPENING BRIEF

---

**Misty A. Hataway-Coné**
State Bar No. 24032277
Misty@conepllc.com
Coné PLLC
2019 Washington Ave., Suite 201
Houston, Texas 77007
Phone:  713-955-2729
Fax: 806-243-5753
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case.  These representations are made in order that

this Court may evaluate possible disqualification or recusal:

**A.    Appellant**

Frontier Custom Builders, Inc.

**B.    Trial & Appellate Counsel for Appellant:**

Misty A. Hataway-Coné
Texas Bar No. 24032277
Misty@conepllc.com
Coné PLLC
2019 Washington Ave., Ste. 201
Houston, Texas 77007
Phone: 713-955-2729

**C.    Appellee**

Kinsale Insurance Company

**D.    Trial & Appellate Counsel for Appellee**

Alicia K. Christopher
Texas Bar No. 11531020
akchristopher@cozen.com
Alicia G. Curran
Texas Bar No. 12587500
acurran@cozen.com
James N. Kuritzkes
Texas Bar No. 24120956
jkuritzkes@cozen.com
Cozen O'Connor
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335
Phone: 214-462-3000
Fax: 214-462-3299

*/s/ Misty A. Hataway-Coné*
Misty A. Hataway-Coné
**Counsel for Appellant**
**Frontier Custom Builders, Inc.**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, Appellant Frontier Custom Builders, Inc. (hereinafter "Frontier") requests oral argument. This case meets the standards for oral argument under Federal Rule of Appellate Procedure 34(a) because oral argument will aid the Court in its disposition of this appeal. Appellant Frontier seeks reversal of the trial court based on the application of the facts in this case to Rule 59(e) Motions for Reconsideration and undersigned counsel believes oral argument will assist the Court in gaining a better understanding of factual nuances and will enable counsel to answer any questions the Court may have.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................iv

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF ISSUES .............................................................................1

STATEMENT OF THE CASE........................................................................2

PROCEDURAL AND FACTUAL BACKGROUND...........................................3

STANDARD OF REVIEW ...........................................................................6

SUMMARY OF ARGUMENT ......................................................................8

ARGUMENT AND AUTHORITIES..............................................................9

      A.     The Trial Court's Memorandum Opinion Coupled With Its Denial Of Frontier's Rule 59(E) Motion, Manifests An Obvious Mistake Of Fact And Law Upon Which The Judgment Is Based. ...................................................................9

          1.     Finding Frontier's Claims Were Barred Was A Manifest Error Of Law That Left Unresolved Genuine Issues Of Material Fact Which Preclude Summary Judgment. ....................................................10

              a.     Under The "Eight Corners Rule," Genuine Issues Of Material Fact Exist As To Whether Kinsale Owed Frontier A Duty To Defend In The Underlying Arbitration. ..............................11

              b.     Summary Judgment Should Have Been Denied Because The Construction Defects In The Underlying Arbitration Constituted An "Occurrence" And "Property Damage" That Occurred During The Policy Period.................13

              c.     Summary Judgment Should Have Been Denied Because Genuine Issues Of Material Fact Exist

As To Whether Exclusion 2.J.(1) Applies And Thus Kinsale's Application Under *Monroe* Was Improper. ...........................................**18**

    d.    **Summary Judgment Should Have Been Denied Because Genuine Issues Of Material Fact Exist As To Whether Exclusion 2.J.(5) And 2.J.(6) Applied. ...........................................20**

    e.    **Summary Judgment Should Have Been Denied Because Kinsale Previously Defended Frontier In A Case With Substantially The Same Factual And Legal Circumstances...........................22**

  2.    **Under The "Eight Corners Rule," Genuine Issues Of Material Fact Exist As To Whether Kinsale Owed Frontier A Duty To Indemnify The Amount Awarded In The Underlying Arbitration...........................25**

    a.    **The Evidence Was Sufficient To Support Coverage And Establish Kinsale's Duty To Indemnify Frontier. Frontier Need Not Segregate Damages To Trigger Kinsale's Duty To Indemnify...........................32**

    b.    **The Evidence Developed In The Underlying Hearing Raised Genuine Issues Of Material Fact As To Kinsale's Duty To Indemnify Frontier...........................32**

  3.    **Exclusion 2.J(1) And 2.B Of The Insurance Policy Did Not Bar Coverage To Frontier. ...........................33**

  4.    **The Fungi Or Bacteria Exclusion Endorsement Was Not Relevant Because Frontier Did Not Seek Recovery For Fungi Or Bacteria...........................34**

  5.    **The Absolute Pollution Exclusion Endorsement Was Not Relevant Because Frontier Did Not Seek Coverage For Mold...........................35**

**6.    Genuine Issues Of Material Fact As To Frontier's Remaining Claims Precludes Summary Judgment...35**

**CONCLUSION AND PRAYER ..........................................................................38**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Cty. Mut. Ins. Co. v. Wootton*,
  494 S.W.3d 825 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) .............. 12

*Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*,
  400 F.3d 260 (5th Cir. 2005) ..................................................................... 13

*American Alliance Ins. Co. v. Frito-Lay, Inc.*,
  788 S.W.2d 152 (Tex. App.—Dallas 1990, writ dism'd) ................................... 12

*City of Houston v. Guthrie*,
  332 S.W.3d 578 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ................ 19

*D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*,
  300 S.W.3d 740 (Tex. 2009) ................................................................. 26, 31

*Demahy v. Schwarz Pharma, Inc.*,
  702 F.3d 177 (5th Cir. 2012) ..................................................................... 7

*Ewing Const. Co. v. Amerisure Ins. Co.*,
  420 S.W.3d 30 (Tex. 2014) .................................................................. 12, 34

*Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*,
  197 F.3d 720 (5th Cir.1999) ..................................................................... 15

*Forsythe v. Saudi Arabian Airlines Corp.*,
  885 F.2d 285 (5th Cir. 1989) ..................................................................... 7

*Gilbane Bldg. Co. v. Admiral Ins. Co.*,
  664 F.3d 589 (5th Cir. 2011) ..................................................................... 12

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*,
  538 F.3d 365 (5th Cir. 2008) ..................................................................... 21

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*,
  197 S.W.3d 305 (Tex. 2006) ............................................................ 12, 25, 31

*Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*,
  1 F.3d 365 (5th Cir. 1993)..................................................................... 12

*Guy v. Crown Equip. Corp.*,
  394 F.3d 320 (5th Cir. 2004)................................................................. 10

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ............................................................................. 10

*Hayes Family Tr. v. State Farm Fire & Cas. Co.*,
  845 F.3d 997 (10th Cir. 2017)............................................................... 10

*In re Transtexas Gas Corp.*,
  303 F.3d 571 (5th Cir. 2002)................................................................... 9

*Johnson v. Wood*,
  157 S.W.2d 146 (Tex.  1941)................................................................. 19

*King v. Dallas Fire Ins. Co.*,
  85 S.W.3d 185 (Tex. 2002)............................................................. 11, 26

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
  242 S.W.3d 1 (Tex. 2007)........................................................... 15, 16, 21

*Landmark Partners, Inc. v. W. World Ins.*,
  No. 02-23-00116-CV, 2023 WL 8940812
  (Tex. App.—Fort Worth Dec. 28, 2023, no pet.).................................. 32

*Lennar Corp. v. Great Am. Ins. Co.*,
  200 S.W. 3d 651 (Tex. App.—Houston [14th Dist.] 2006, pet denied)........ 15, 16

*Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*,
  75 F.4th 522 (5th Cir. 2023) ................................................................. 13

*Liberty Mut. Ins. Co. v. Graham*,
  473 F.3d 596 (5th. Cir. 2006)............................................................... 12

*Lyles v. Medtronic Sofamor Danek, USA, Inc.*,
  871 F.3d 305 (5th Cir. 2017)................................................................ 10

*Mid-Continent Cas. Co. v. Krolczyk*,
  408 S.W.3d 896 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ................ 21

*Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.,*
  640 S.W.3d 195 (Tex. 2022) .................................................................... 18, 21, 22

*N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*,
  930 S.W.2d 829 (Tex. App.—Houston [1st Dist.] 1996, no writ) ...................... 22

*Nat'l Builders Ins. Co. v. Architects, Devs. & Contractors, Inc.*,
  No. 5:20-CV-162-H, 2021 WL 3030178
  (N.D. Tex. Feb. 10, 2021) ............................................................................ 25

*Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*,
  939 S.W.2d 139 (Tex. 1997) ........................................................................ 11

*Ortiz v. State Farm Lloyds*,
  589 S.W.3d 127 (Tex. 2019) ................................................................... 10, 37

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,
  279 S.W.3d 650 (Tex. 2009) ............................................................. 11, 25, 31

*Progressive County Mut. Ins. Co. v. Sink*,
  107 S.W.3d 547 (Tex .2003) ........................................................................ 25

*Provident Life & Accident Ins. Co. v. Knott*,
  128 S.W.3d 211 (Tex. 2003) ........................................................................ 25

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) .......................................................................... 7

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) ....................................................................... 6, 7

*Simon v. United States*,
  891 F.2d 1154 (5th Cir. 1990) ......................................................................... 7

*State Farm Life Ins. Co. v. Beaston*,
  907 S.W.2d 430 (Tex. 1995) ........................................................................ 25

x

*State Farm Lloyds v. Richards*,
966 F.3d 389 (5th Cir. 2020).................................................................. 11

*Templet v. HydroChem, Inc.*,
367 F.3d 473 (5th Cir. 2004)................................................................ 7, 9

*Todd Shipyards Corp. v. Turbine Serv., Inc.*,
674 F.2d 401 (5th Cir. 1982).................................................................. 16

*USAA Tex. Lloyds Co. v. Menchaca*,
545 S.W.3d 479 (Tex. 2018)....................................................... 35, 36, 37

*U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*,
490 S.W.3d 20 (Tex. 2015).................................................................... 23

*Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*,
141 S.W.3d 198 (Tex.2004).................................................................... 26

*Viles v. Sec. Nat. Ins. Co.*,
788 S.W.2d 566 (Tex. 1990)................................................................... 37

*Weber v. Roadway Exp., Inc.*,
199 F.3d 270 (5th Cir. 2000)................................................................... 8

*Wilshire Ins. Co. v. RJT Const., LLC*,
581 F.3d 222 (5th Cir. 2009).................................................................. 21

*Zurich Am. Ins. Co. v. Certain Underwriters Subscribing to OEE Policy NRG*
*475535-9-02*, 634 S.W.3d 131
(Tex. App.—Houston [1st Dist.] 2020, pet. denied)............................................ 22

*Zurich Am. Ins. Co. v. Nokia, Inc.*,
268 S.W.3d 487 (Tex. 2008)........................................................ 12, 22, 26

**Statutes**

Tex. Bus. & Com. Code § 17.46(B)(5), (12) ...................................................... 36

Tex. Ins. Code § 541.061(3)–(5)................................................................. 36

## Other Authorities

14 Couch On Insurance §200:3................................................................... 26

14 Couch on Insurance §200:19 ............................................................. 12

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291

because it is an appeal of a final decision from a District Court of the United States.

Frontier timely appealed by filing its notice of appeal within 30 days of the district

court's order of June 30, 2025.

## STATEMENT OF ISSUES

This appeal requires the Court to evaluate the propriety of the trial court's

order granting summary judgment for Appellee, Kinsale Insurance Company,

(hereinafter "Kinsale"). Specifically, this appeal asks the Court to consider whether

the District Court erred in entering its June 30, 2025, Final Judgment granting

Kinsale's Motion for Summary Judgment.[1]  This includes, but is not limited to, the

following sub issues:

> a.    Whether the Trial Court committed a "manifest error" sufficient
> to trigger the protections of Rule 59(e) in entering a finding that

---

[1] The Final Judgment was based upon the Trial Court's findings made clear in the Court's Memorandum Opinion. ROA.25-20428.754-757. However, after Appellant pointed out that the Memorandum Opinion was based upon facts which did not exist in the record, the Trial Court admitted that those facts were erroneous. Essentially, despite admitting the error, the Trial Court found the error ultimately did not matter because the fundamental outcome regarding the granting of summary judgment was, in the Trial Court's opinion, correct. Even though the Trial Court denied Appellant's Rule 59(e) Motion, it essentially reformed the grounds for its judgment stating, "Among those grounds are the policy exclusions that preclude coverage for property damage to property owned by the insured. Because Frontier retained legal title to the property during construction, this exclusion applies, barring coverage for both a defense and for indemnity. Consequently, as there is no coverage under the policy, Frontier's extra-contractual claims necessarily fail as a matter of law, including alleged violations of the Texas Insurance Code, breach of duty of good faith and fair dealing, DTPA claims, and claims under the Prompt Payment of Claims Act." ROA.25-20428.877-878. It is from this mixed ruling, merging the Final Judgment and the Trial Court's denial of Appellant's Rule 59(e) Motion, upon which Appellant appeals.

1

policy exclusions precluded coverage for property damage to property allegedly owned by Frontier.

b.  Whether the Trial Court committed a "manifest error" sufficient to trigger the protections of Rule 59(e) in entering a finding that because Kinsale allegedly retained legal title to the property during construction, an exclusion applied, barring coverage for both a defense and indemnity.

c.  Whether the Trial Court committed a "manifest error" sufficient to trigger the protections of Rule 59(e) in entering a finding that Frontier's extra-contractual claims necessarily fail as a matter of law, which includes violations of the Texas Insurance Code, breach of duty of good faith and fair dealing, DTPA claims, and claims under the Prompt Payment of Claims Act because there was allegedly no coverage under the policy.

## STATEMENT OF THE CASE

*Nature of the proceeding:*    This is an appeal from the grant of Appellee Kinsale's motion for summary judgment and denial of Frontier's Rule 59(e) Motion. Frontier first filed this suit on January 23, 2024, in state court after Kinsale denied coverage for an arbitration proceeding arising from Frontier's construction of a custom home for non-parties, the Glovers. ROA.25-20428.16-21. On March 20, 2025, Kinsale filed a Motion for Summary Judgment arguing that it did not have a duty to defend and/or indemnify Frontier in the underlying arbitration. ROA.25-20428.244-290. Frontier timely filed its response, raising contested fact issues on Kinsale's duties under the policies. ROA.25-20428.649-676. On June 30, 2025, the Trial Court issued its Final Judgment granting Kinsale's Motion. ROA.25-20428.758. In its Memorandum Opinion, the District Court found that Frontier's breach of contract claim was precluded by Kinsale promptly paying the majority of the appraisal award. ROA.25-20428.756. The Court further found that there was no evidence of damages beyond the $1,650 in living expenses which was the only portion in dispute once Kinsale paid the appraisal award. ROA.25-20428.757. It is undisputed that these facts had no relation to this case. ROA.25-20428.868-869. The Trial Court

2

recognized its error when considering Frontier's Rule 59(e) Motion for New Trial. ROA.25-20428.877-878. Despite this recognition, the Trial Court found that it was of no consequence and denied Frontier's Motion. ROA.25-20428.877-878.

*Trial Court:*   The Southern District of Texas—Houston Division, the Honorable Kenneth M. Hoyt, Presiding

*Disposition:*   The District Court granted Appellee Kinsale's Motion for Summary Judgment. ROA.25-20428.758. Frontier filed a Rule 59(e) Motion which was subsequently denied. ROA.25-20428.877.

## PROCEDURAL AND FACTUAL BACKGROUND

Frontier first filed this suit on January 23, 2024, in state court,[2] after Kinsale denied coverage on January 4, 2022 under its Commercial General Liability ("CGL") policy No. 0100039739-2, ("Kinsale Policy"), stating among other things, that it had no duty to defend or indemnify its insured, Frontier, in an "Underlying Arbitration."[3]

The Underlying Arbitration arose from a construction dispute between Frontier and its former clients, the Glovers. Frontier and the Glovers entered into a Residential Earnest Money Contract for the purchase of property and construction by Frontier of a home located at 20636 Eaglewood Forest Drive, Porter, Texas 77365. ROA.25-20428.512-519. Construction-related issues arose between the

---

[2] ROA.25-20428.16-21.

[3] The "Underlying Arbitration" refers to AAA under Case No. 01-20-005-3864; *In the Matter of the Arbitration Between: Michael and Sherrie Glover and Frontier Custom Builders, Inc.* ROA.25-20428.527-533.

parties and the Glovers filed an arbitration action against Frontier with the American Arbitration Association ("AAA") alleging, among other things, that Frontier negligently performed certain work on the Residence which caused damage to other property within the Residence. ROA.25-20428.527-533. Specifically, the Glovers asserted that Frontier failed to properly install the HVAC system and that failure caused damage to other property within the Residence. ROA.25-20428.527-533. The defects and property damage to the Glovers' property occurred prior to closing, and well within the policy period, as evidenced by the Glovers' November 2019 email to Frontier. ROA.25-20428.551-555.

On December 2, 2021, Frontier sent a notice of claim to Kinsale regarding the negligence claims asserted by the Glovers. ROA.25-20428.562. On December 3, 2021, Frontier provided additional information to Kinsale regarding the claims being asserted by the Glovers in the arbitration. ROA.25-20428.562. By letter dated January 24, 2022, Kinsale stated that it was not providing any coverage to Frontier under the Kinsale Policy. ROA.25-20428.562-574. Despite numerous attempts by Frontier to have Kinsale honor its contractual obligations to defend it in connection with the Glover's claims of negligence, Kinsale refused to provide a defense to Frontier. Accordingly, Frontier incurred substantial attorneys' fees in defending the Glovers' claims. ROA.25-20428.656.

4

On March 20, 2025, Kinsale filed a Motion for Summary Judgment alleging that it did not have a duty to defend and/or indemnify Frontier because: (1) exclusion 2.j.(1) of the insurance policy bars recovery because "property damage" does not apply to property plaintiff "owns;" (2) exclusions 2.j.(5) and 2.j(6) of the policy preclude any duty to indemnify; and (3) any "occurrence" or "property damage" occurred outside the policy period. ROA.25-20428.244-290. Frontier timely filed its response, raising genuine issues of material fact as to: (1) whether Kinsale had and subsequently breached its duty to defend Frontier in the underlying dispute; (2) whether the exclusions in the Policy preclude Kinsale's duty to indemnity Frontier in the underlying dispute; and (3) whether Frontier's claims for breach of the duty of good fair and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act survive as a result. ROA.25-20428.649-676.

On June 30, 2025, the Trial Court issued its Final Judgment granting Kinsale's Motion. ROA.25-20428.758. In its Memorandum Opinion, the Trial Court found that Frontier's breach of contract claim was precluded by Kinsale promptly paying the majority of the appraisal award. ROA.25-20428.756. The Court further found that there was no evidence of damages beyond the $1,650 in living expenses which was the only portion in dispute once Kinsale paid the appraisal award. ROA.25-

20428.757. **It is undisputed that these facts had no relation to this case.** ROA.25-20428.868-869.

The Trial Court recognized its error when considering Kinsale's Rule 59(e) Motion. ROA.25-20428.877-878. Despite this recognition, the Trial Court found that it was of no consequence because the outcome was the same. ROA.25-20428.877-878. The Trial Court still thought summary judgment in favor of Kinsale was proper but now it was because "…policy exclusions [] preclude coverage for property damage to property owned by the insured. Because Frontier retained legal title to the property during construction, this exclusion applies, barring coverage for both a defense and for indemnity. Consequently, as there is no coverage under the policy, Frontier's extra-contractual claims necessarily fail as a matter of law, including alleged violations of the Texas Insurance Code, breach of duty of good faith and fair dealing, DTPA claims, and claims under the Prompt Payment of Claims Act." ROA.25-20428.877-878.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a Rule 59(e) motion for an abuse of discretion. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). "However, to the extent that a ruling was a reconsideration of a question of law . . . the standard of review is *de novo*." *Id.* (internal quotation marks and citation omitted). In order to obtain relief under Rule 59(e), the movant must "clearly establish either a manifest

6

error of law or fact or must present newly discovered evidence." *Id.* (internal quotation marks and citation omitted).

Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "[A] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)) (internal quotations omitted). "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). A Rule 59(e) motion may not be used to relitigate issues that "should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989). Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. *Templet*, 367 F.3d at 479.

It is within the court's discretion to reopen a case under Rule 59(e). *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 276 (5th Cir. 2000). A court abuses its discretion when its decision is manifestly unjust in law or fact. *Id.* at 479-80.

## SUMMARY OF ARGUMENT

The Trial Court abused its discretion when it granted Kinsale's Motion for Summary Judgment. The Trial Court failed to address Frontier's arguments regarding Kinsale's duty to defend and indemnify Appellant pursuant to the eight-corners doctrine. Such error rises to the level of "manifest error" and is exactly the type of error Rule 59(e) was designed to protect against. Summary judgment was improper as a result.

However, even if Frontier is unsuccessful in establishing that Kinsale breached the contract, Frontier may still recover damages under the Insurance Code where Kinsale's statutory violation(s) caused Frontier to lose its contractual right to benefits under the insurance policy and/or caused Frontier injury independent of the loss of policy benefits. Even if the breach of contract claims were barred due to payment of the alleged appraisal award, which, as will be argued, did not occur here, such payment does not, as a matter of law, bar Frontier's claims under the Prompt Payment Act. As a result, genuine issues of material fact continue to exist and summary judgment was improper.

This Court should reverse the District Court's Order Granting Kinsale's Motion for Summary Judgment and remand for further proceedings.

## ARGUMENT AND AUTHORITIES

**A.    The Trial Court's Memorandum Opinion Coupled With Its Denial Of Frontier's Rule 59(E) Motion, Manifests An Obvious Mistake Of Fact And Law Upon Which The Judgment Is Based.**

A Rule 59(e) motion for reconsideration is appropriate where the judgment manifests "the obvious misapprehension of a party's position, facts, or law or mistaken decision by the court of issues outside those presented for determination." A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet*, 367 F.3d at 478 (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) motion for reconsideration, in essence, gives the district court the chance to correct mistakes that may have been made.

As discussed *infra*, the Final Judgment and Memorandum Opinion issued by the Trial Court on July 30, 2025 contained sufficient errors to manifest an obvious misapprehension of facts and law. ROA.25-20428.754-758. Further, even when the Trial Court recognized its error, the Trial Court then failed to properly review Frontier's claims regarding Kinsale's duty to defend and indemnify again constituting a misapprehension of facts and law. ROA.25-20428.877-878. To deny Frontier's Motion for Reconsideration in light of such clear errors was an abuse of

the Trial Court's discretion. This Court should reverse the trial court's judgment and remand for further proceedings.

### 1.     *Finding Frontier's Claims Were Barred Was A Manifest Error Of Law That Left Unresolved Genuine Issues Of Material Fact Which Preclude Summary Judgment.*

A manifest error of law must be "plain and indisputable," amounting "to a complete disregard of the controlling law." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017).  A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). The June 30th Memorandum Opinion manifests a clear error in the application of legal precedent used by the trial court in its determination. ROA.25-20428.754-757.

A federal court sitting in diversity, as the Trial Court did here, applies the substantive law of the forum state. *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1005 (10th Cir. 2017) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). In applying Texas law, the Trial Court cited *Ortiz v. State Farm Lloyds* in which the Texas Supreme Court examined only the effect of an appraisal award and payment on Ortiz's claims. 589 S.W.3d 127, 132 (Tex. 2019). Here, Frontier's

claims should have been examined pursuant to the well-established Texas "eight corners rule."[4]

Under the "eight corners rule," there are genuine issues of material fact as to (1) whether Kinsale owed Frontier a duty to defend in the underlying arbitration; and (2) whether Kinsale owed Frontier a duty to indemnify the amount awarded in the underlying arbitration.[5]

> **a.** **Under The "Eight Corners Rule," Genuine Issues Of Material Fact Exist As To Whether Kinsale Owed Frontier A Duty To Defend In The Underlying Arbitration.**

Under Texas' well-established eight-corners rule, an insurer's "duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). Only these two documents are ordinarily relevant to the duty-to-defend inquiry. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*,

---

[4] A Rule 59(e) motion allows a party to reargue previously articulated positions to correct clear legal error. *See Hayes Family Tr.*, 845 F.3d at 1005. Here, there is clear legal error.

[5] "The petition's (or complaint's) 'four corners' + the policy's 'four corners' = the 'eight corners' that give the rule its name." *State Farm Lloyds v. Richards*, 966 F.3d 389, 392 (5th Cir. 2020).

11

197 S.W.3d 305, 308 (Tex. 2006); *see also Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014); *Allstate Cty. Mut. Ins. Co. v. Wootton*, 494 S.W.3d 825, 834 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Thus, "'[e]ven if the allegations are groundless, false, or fraudulent, the insurer is obligated to defend.'" *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (quoting 14 COUCH ON INSURANCE §200:19).

In making the duty-to-defend determination, courts resolve all doubts regarding the duty to defend in favor of the existence of a duty, and Courts should construe the pleadings liberally. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 602 (5th. Cir. 2006). If the petition does not contain factual allegations sufficient to clearly bring the underlying case within the coverage, the general rule is that the insurer is obligated to defend if the petition potentially includes a claim that falls within the coverage of the policy. *Id*. The duty to defend is not affected by **facts ascertained before suit or developed in the course of litigation**, or by the ultimate outcome of the suit. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993) (citing *American Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153-54 (Tex. App.—Dallas 1990, writ dism'd)). Moreover, in applying the eight-corners rule, Courts may not read facts into the pleadings or look outside the pleadings. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011). **If a petition potentially includes a covered claim,**

12

the insurer *must* defend the entire suit. *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 529 (5th Cir. 2023) (citing *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005)).

> **b.** **Summary Judgment Should Have Been Denied Because The Construction Defects In The Underlying Arbitration Constituted An "Occurrence" And "Property Damage" That Occurred During The Policy Period.**

During the summary judgment proceedings, Kinsale argued that it had no duty to defend Frontier in the Underlying Arbitration because the construction defects listed did not qualify as "property damage" and that the damages were not caused by an "occurrence." ROA.25-20428.270-273. However, as pled, the damages alleged by the Glovers fell squarely within the four corners of the Kinsale Policy and constituted both an "occurrence" and "property damage." Under the clear, unambiguous terms of the Kinsale Policy, Kinsale contractually agreed to provide coverage for bodily injury and property damage that fell within its Coverage Part. Specifically, the Kinsale Policy provides:

> **SECTION I — COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.** **Insuring Agreement**
>
> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking

13

those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such

14

> "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

ROA.25-20428.46-119.

It is well established that claims arising from unintended construction defects or faulty workmanship can constitute an "accident" or "occurrence" if the resulting "property damage" stems from an "unexpected, unforeseen, or undesigned happening or consequence" of the insured's negligence. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1 (Tex. 2007) (citing *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 725 (5th Cir. 1999)). An insured's conduct is considered an occurrence if it (1) qualifies as an accident and (2) results in harm that the insured did not expect. *Lennar Corp. v. Great Am. Ins. Co.* 200 S.W. 3d 651 (Tex. App.—Houston [14th Dist.] 2006, pet denied); *Lamar Homes,* 242 S.W.3d at 9. There is an accident when an action is intentionally taken, but negligently performed, and the effect is not the intended or expected result had the action been performed non-negligently. *Lennar Corp.,* 200 S.W. 3d 651. The conduct made the basis of the Underlying Arbitration qualified as an accident because the construction activities were undertaken with the intent to improve the Glovers' home but were allegedly performed negligently, and the resulting damage was neither intended nor expected by Frontier.

15

Allegations of damage to or loss of use of a home itself may also constitute "property damage" sufficient to invoke an insurer's duty to defend. *Lamar Homes*, 242 S.W.3d at 4. Additionally, water damage resulting from construction negligence is considered to be property damage. *Lennar Corp.,* 200 S.W. 3d at 651. Once "property damage" is established, the policy in question also extends to consequential damages that flow from the property damage. *See generally, Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982).

Kinsale argued that the claims and defects asserted by the Glovers did not meet the insuring agreement because they did not qualify as an "occurrence or "property damage." ROA.25-20428.269-273. The claims and defects asserted in the Underlying Arbitration fall squarely within the four corners of the Kinsale policy and constitute both an "occurrence"[6] and "property damage."[7]

In the Underlying Arbitration, the AAA found in favor of the Glovers and awarded them damages for the construction issues and or defects at the property. ROA.25-20428.541-548. Nonetheless, in the underlying proceedings, Kinsale asserted that "the statutory fraud and negligent misrepresentation claims allegedly

---

[6] Under the Policy, "occurrence" is defined as "…an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ROA.25-20428.312.

[7] Under the Policy, "property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." ROA.25-20428.313.

resulted in economic and aesthetic issues regarding the home and do not qualify as 'property damage.'" ROA.25-20428.269. Yet, Kinsale, in the same motion, noted that the arbitrators did not award the Glovers any damages based upon fraudulent inducement, statutory fraud, or negligent misrepresentation. ROA.25-20428.266; ROA.25-20428.541-548. **The Glovers recovered damages solely based on the construction defects and their breach of contract claim.** ROA.25-20428.862-865. The defective work alleged in the Arbitration was covered under the Policy as it constituted an "occurrence," and all the unexpected or unforeseen consequences resulting from these occurrences constitute "property damage."

Kinsale argued that the alleged defects either occurred or were reported after the policy period ended on June 14, 2019 and was not renewed. ROA.25-20428.277. Therefore, according to Kinsale, any related claims are barred. ROA.25-20428.277. Kinsale contended that since the Glovers closed on their home on June 27, 2019, and Frontier was notified of the damage in July, well after the policy period had ended, coverage was barred. ROA.25-20428.267. However, in a November 8, 2019 email to Frontier, Michael Glover indicated that the damage was discovered and reported months before closing, confirming that issues arose during the policy period. In his email, Mr. Glover wrote, in part:

> Remember, **I reported to Nick that the damage occurred over a period of months prior to closing**…I believe that the sheetrock in the area described has possible mold damage. The mold accumulated over time

17

from rain that dripped through tiny holes in the pipes above the air conditioning units. I've already explained to Nick that the HVAC company Frontier used was responsible for the damage. They did come out and repaired the holes where the water was leaking. Now, I'm waiting for Frontier to accept responsibility and send someone out to assess the damage and tell us what will it take to fix it properly and expeditiously.

ROA.25-20428.551-555 (emphasis added).

This email exchange between the parties supports Frontier's claim that the damage occurred over time and well before the closing date, placing all occurrences within the policy period. Accordingly, the property damages and claims made the basis of the Underlying Arbitration fall within the four corners of the Kinsale Policy and as such, summary judgment should have been denied.

**c.** **Summary Judgment Should Have Been Denied Because Genuine Issues Of Material Fact Exist As To Whether Exclusion 2.J.(1) Applies And Thus Kinsale's Application Under *Monroe* Was Improper.**

Kinsale argued that it could introduce extrinsic evidence when:

(1) the evidence pertains solely to coverage and does not overlap with the underlying merits of liability,

(2) it does not contradict facts alleged in the pleadings, and

(3) it conclusively establishes the coverage facts to be proved.

*Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 202 (Tex. 2022); ROA.25-20428.269. However, under *Monroe*, Kinsale should not be permitted to

18

consider the date Frontier purchased the real property in evaluating its duty to defend, as that fact is not relevant to the coverage determination.

Appellee asserted that the purchase date was relevant because Frontier "owned" the Glover property at the time the alleged events took place. ROA.25-20428.277. Yet Frontier and the Glovers had entered into an earnest money contract on August 5, 2017, under which Frontier held "legal title," but the Glovers possessed an "equitable right" to the property. ROA.25-20428.512-519. "Equitable title" refers to a right that is enforceable in equity, to have the legal title to real estate transferred to the holder of that right upon the satisfaction of certain conditions. *City of Houston v. Guthrie*, 332 S.W.3d 578 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). As purchasers under this contract, the Glovers had an "equitable right" to the property, and upon payment of the full purchase price that right ripened to "equitable title." *Johnson v. Wood*, 157 S.W.2d 146, 148 (Tex. 1941).

The construction of the home on the property and all subsequent improvements to the property were made for the benefit of the Glovers in accordance with all three contracts they signed with Frontier. ROA.25-20428.512-519; *see also* ROA.25-20428.678-682; *see also* ROA.25-20428.684-707. Further, the Declarations page of the CGL Policy—specifically under the section titled "all premises you Own, Rent, or Occupy"—lists one property: 1801 Sherwood Forest Street, Houston, Texas 77043. ROA.25-20428.439. It does not reference the Glover

property located at 20626 Eaglewood Forest Drive or any of the other properties Frontier held legal title in connection with its business of constructing new homes. Therefore, **exclusion 2.j.(1) can only refer back to the Declaration page in the Insurance Policy and applies solely to the premises listed and cannot and should not be extended to other unlisted properties**. Accordingly, relying on the purchase date of the lot would contradict the Declarations page, which already identifies the property Frontier is deemed to "own, rent, or occupy" under the Policy. Because the policy does not define the terms own, rent, or occupy," Kinsale's assertion (as well as that of the Trial Court) that Frontier "owned" the Glover's property fails under Appellee's own interpretation. At a minimum, this inconsistency raise a genuine issue of material fact which should have precluded summary judgment. The Trial Court erred in finding otherwise.

> d. <u>**Summary Judgment Should Have Been Denied Because Genuine Issues Of Material Fact Exist As To Whether Exclusion 2.J.(5) And 2.J.(6) Applied.**</u>

Kinsale argued that indemnification was not warranted based upon exclusion 2.j.(5), which states "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations if the "property damage" arises out of those operations…[.]" ROA.25-20428.282; *see also* ROA.25-20428.446. This exclusion does not apply here because, given its plain meaning, the use of the present tense indicates that the

exclusion applies to "property damage" which occurs *while* the work is being performed. Thus, this exclusion only applies while operations are being performed. *Lamar Homes,* 242 S.W.3d 1.

Similarly, exclusion 2.j.(6) does not apply here because of its limiting language. Exclusion 2.j.(6) excludes "that particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it." ROA.25-20428.446. Texas courts have determined that if an exclusion is intended to **clearly bar coverage for all property damage** caused by the insured's defective work, it should avoid using limiting phrases like "that particular part of any property" and instead use more definitive phrases. *Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365 (5th Cir. 2008)). This is because exclusions like 2.j.(6) apply *only* to the cost of repairing or replacing the insured's defective work; **it does not bar coverage for damage to other property resulting from the defective work**. *Id*. (citing *Wilshire Ins. Co. v. RJT Const., LLC,* 581 F.3d 222 (5th Cir. 2009)). Therefore, exclusion 2.j.(5) and 2.j.(6) do not apply. The Trial Court erred and committed a manifest error of law in finding otherwise.

**e.** **Summary Judgment Should Have Been Denied Because Kinsale Previously Defended Frontier In A Case With Substantially The Same Factual And Legal Circumstances.**

Texas law permits parties to go beyond the eight corners and consider extrinsic evidence when: (1) the evidence pertains solely to coverage and does not overlap with the underlying merits of liability, (2) it does not contradict facts alleged in the pleadings, and (3) it conclusively establishes the coverage facts to be proved. *Monroe,* 640 S.W.3d 195, 201. Because courts must consider the insurance policy in its entirety and interpret it to fulfill the **reasonable expectations** of the parties, and in light of industry customs and usages, it is essential that courts consider what these reasonable expectations were based upon the Parties' prior conduct. *Zurich Am. Ins. Co. v. Certain Underwriters Subscribing to OEE Policy NRG 475535-9-02*, 634 S.W.3d 131 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (citing *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 834 (Tex. App.—Houston [1st Dist.] 1996, no writ). This evidence pertains solely to coverage, does not overlap with the underlying merits of liability, does not contradict facts alleged in the pleadings, and it conclusively establishes the coverage fact to be proved. Therefore, under *Monroe*, Frontier may consider documents that showcase the Parties' prior conduct to determine Frontier's reasonable expectations.

Here, Frontier reasonably believed it would be indemnified and defended under the policy issued by Kinsale based upon its prior defense and indemnification

22

of Frontier in another case. Specifically, Kinsale previously provided a defense and indemnity to Frontier in a factually indistinguishable situation—*Lahlou v. Frontier Custom Builders, Inc.*—where Frontier also held legal title to the property while constructing the home under a contract with the buyer who had an equitable right, and upon completion of the home, title was transferred to the buyer. ROA.25-20428.708-716 (Lahlou original petition); *see also* ROA.25-20428.717-726 (Lahlou-Kinsale Policy Acknowledgment of Claim); *see also* ROA.25-20428.727-728 (Lahlou Seller's Statement).

In that case, the buyer alleged multiple construction defects, including but not limited to improper installation of roofing materials and the HVAC system. ROA.25-20428.708-716 (Lahlou original petition). As in the present case, the damage occurred while Frontier held legal title, and the buyer filed suit only after title was transferred. Kinsale agreed to provide a defense and indemnify Frontier in that matter. The factual and legal circumstances are substantially the same here, yet Kinsale now denied coverage.

The "interpretation of an insurance policy, like other contracts, begins with the text, and requires the undefined words to be given their plain, ordinary and generally accepted meanings **absent some indication of a different intent**." *U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 23 (Tex. 2015). Here, there was ample evidence of Kinsale's ***intent*** through its prior course of conduct, which

23

reflects a recognition that such claims were covered under the policy, as Appellee had previously provided defenses to Frontier under materially identical circumstances **involving the same exact insurance policy**. ROA.25-20428.717-726.

While Kinsale attempted to distinguish the policies, it admitted in its own Motion for Summary Judgment that all three commercial general liability insurance policies issued to Frontier—Policy Nos. 010009739-0, 0100039739-1, and 0100039739-2—**contain identical terms and exclusions, and that the coverage analysis under any of the three policies would be the same**. ROA.25-20428.258. Accordingly, even if the policy at issue in *Lahlou* was policy No. 0100039739-1 and the policy at issue here is 0100039739-2, **the language governing both is identical**, and the insurer's interpretation and application of that language in prior matters is highly relevant. Kinsale's prior defense of Frontier under identical policy terms and facts supports the insured's reasonable expectation of coverage and creates, at a minimum, a genuine issue of material fact that should have precluded summary judgment. As summary judgment was improper, the Trial Court committed a manifest error of law or fact warranting reversal.  This Court should reverse the judgment of the Trial Court and remand this case for further proceedings.

24

**2.** ***Under The "Eight Corners Rule," Genuine Issues Of Material Fact Exist As To Whether Kinsale Owed Frontier A Duty To Indemnify The Amount Awarded In The Underlying Arbitration.***

While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the "facts actually established in the underlying suit control the duty to indemnify." *Pine Oak Builders*, 279 S.W.3d at 656; *GuideOne*, 197 S.W.3d at 310. As with any other contract, breach or compliance with the terms of an insurance policy is determined not by pleadings, but by proof. *See, e.g., Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003), *as modified on denial of reh'g* (May 15, 2003); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). Thus, the insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify. *Id*. The duty to indemnify may also be based upon findings made in arbitration proceedings. *Nat'l Builders Ins. Co. v. Architects, Devs. & Contractors, Inc.*, No. 5:20-CV-162-H, 2021 WL 3030178, at \*4-6 (N.D. Tex. Feb. 10, 2021).

25

The facts established in the Underlying Arbitration, pursuant to the eight-corners rule, support Kinsale's duty to indemnify Frontier. "In liability insurance policies generally, an insurer assumes both the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured, and the duty to defend any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent," subject to the terms of the policy. *D.R. Horton*, 300 S.W.3d at 743 (citing 14 Lee R. Russ & Thomas F. Segalia, COUCH ON INSURANCE §200:3 (3d ed. 2009)); *see also Nokia, Inc.*, 268 S.W.3d at 490. Additionally, the duty to defend and the duty to indemnify "are distinct and separate duties." *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).

In this case, the parties were compelled to Arbitration in the Underlying Suit. The AAA found in favor of the Glovers against Frontier at the close of the arbitration proceedings by awarding them damages, which included attorney's fees. ROA.25-20428.547. The Arbitrators' ruling for the Glovers were based upon the following facts:

> "The Glovers' claims arise from the construction by Frontier of the Glovers' custom home located at 20626 Eaglewood Forest Drive in Porter, Texas (the 'Residence') pursuant to that certain Residential Earnest Money Contract dated December 5, 2017, executed by the Parties (the 'Original Contract')."

26

ROA. 25-20428.542.

"Various issues arose during construction of the Residence, and during construction, on or about April 3, 2019, a mediation as contemplated by the Original Contract was initiated by the Glovers. As a result of the mediation, the Parties executed that certain Amendment to Residential Earnest Money Contract dated effective as of April 3, 2019 (the 'Amendment') wherein Frontier agreed to resolve and address certain issues regarding construction of the Residence existing as of the date of the mediation and to complete certain work and/or perform certain corrective work regarding various components of the Residence, all as described therein (collectively, the 'Corrective Work'). The Amendment provides, in part, that (a) Frontier will substantially complete the Corrective Work within twenty-one (21) days from the Monday after the date of the Amendment (the 'Completion Deadline'), (b) the Completion Deadline does not apply to back order items, reselections, or unselected items; however, Frontier will complete those items within twenty-one (21) days from the day of selection, reselection, or receipt of back order items, whichever date is later, (c) substantial completion does not apply to minor adjustments or corrections of existing construction, (d) Frontier is entitled to rain days that extend the Completion Deadline for exterior work, with notice to Glovers, and (e) Frontier agrees to credit the Glovers $150 per day it fails to complete the Corrective Work past the Completion Deadline (the 'Liquidated Damages'). The Original Contract, as amended by the Amendment, is herein called the 'Contract.'"

ROA. 25-20428.542-543.

"The Glovers closed on their purchase of the Residence on or about June 27, 2019 (the 'Closing'), and moved into the Residence on or about June 29, 2019. As of the Closing, some of the Corrective Work had not been substantially completed. The Parties determined that $5,120.66 in

27

> Liquidated Damages would be payable by Frontier to the
> Glovers at such Closing, and the Parties executed a closing
> settlement statement which provided a $5,200.00 credit to
> the Glovers for Liquidated Damages. The Parties disagree
> as to whether such payment was in full settlement of all
> Liquidated Damages."

ROA. 25-20428.543.

> "Following the Glovers' purchase of the Residence, the
> Glovers' continued to advise Frontier of Corrective Work
> not yet substantially completed, and also advised Frontier
> from time to time of additional construction issues and/or
> defects regarding the Residence allegedly caused by
> Frontier."

ROA. 25-20428.

Based upon those facts, the Arbitrators found that Frontier had "breached the

terms and provisions of the Contract by failing to substantially complete all of the

Corrective Work, and by failing to complete or correct additional construction issues

and/or defects regarding the Residence of which Frontier was given notice." ROA.

25-20428.544. Further, the Arbitrators found Frontier had a duty to construct the

Residence using the care and skill of an ordinary builder under the circumstances.

ROA. 25-20428.544. The Arbitrators found Frontier breached this duty as to many

of the Glovers' claims. Those claims (and the associated damage amounts) were as

follows:

> -Failing to provide quality brickwork; left broken bricks
> on exterior walls, holes in mortar, mortar of different
> colors, and damaged foundation: $11,161.00;

28

-Failing to stain cabinets with Claimants' selection and alleging that stain could and would be remedied by sanding: $29,059.40;

-Failing to clean the garage and/or paint the garage floor: $1,110.00;

-Failing to provide security sensors for all doors and windows: $102.00;

-Failing to install doorbell, per electrical floor plans: $102.00;

-Failing to provide selected sink bowls in master bathroom: $1,778.94;

-Failing to provide decorative legs on kitchen island cabinet: $250.00;

-Failing to provide crown finish in powder bath, guest bedroom, study, and second master & bath: $1,113.58;

-Failing to secure the water pipes in the attic to the floor to prevent rattling noise: $350.00;

-Failing to provide new fencing in all areas of the backyard where needed: $1,650.00

-Failing to complete master linen closet, leaving it with partly stained and partly painted shelves: $150.00;

-Failing to install door to bathroom #4 for one to enter without being impeded: $443.00;

-Failing to install electrical outlet in study according to good building practices, leaving instead large gaps behind outlets in stone: $133.00;

-Failing to repair sheetrock, insulation, and shoe mold in game room and hallway, damaged by leak from HVAC/air conditioning pipe leak from roof: $1,900.00;

-Failing to provide ladder access to garage attic: $583.00;

-Failing to properly seal driveway: $1,550.00;

-Failing to complete wood trim near edge of bar, and instead, filling with caulk: $75.00;

-Failing to place small hardiplank section of wood along front of house near soffit where stone joins roof: $150.00;

-Failing to properly paint exhaust pipe on roof above bedroom #4: $25.00;

-Failing to install new gas line pipe on patio but instead install rusted one: $21.00;

-Failing to extend and cap the two PVC pipes that drain through soffit from HVAC system: $254.00;

-Failing to properly grade backyard so that water drains away from foundation less than 48 hours after a normal rain: $4,960.00;

-Failing to provide change order for increase cost in downdraft: $937.17.

The breach was found to have proximately caused the Glovers' damages with respect to the above Items. ROA.25-20428.544-547. Therefore, according to the Arbitrators, the Glovers were successful on their negligence claim against Frontier.

ROA.25-20428.544. Accordingly, based upon those facts and findings, the Arbitrators awarded the Glovers the sum of $57,858.09 for their actual damages.[8]

As has been argued *supra*, the key component in determining whether an insurer has a duty to indemnify is to look to the "facts actually established in the underlying suit." *Pine Oak Builders*, 279 S.W.3d at 656; *GuideOne*, 197 S.W.3d at 310. Clearly, the facts established at the underlying arbitration proceeding, shows that Frontier was found by the Panel to have constructed the Glovers' home negligently. ROA.25-20428.544.

Of note, however, is what the Glovers were not awarded during the arbitration proceeding. ROA.25-20428.544-547. They recovered nothing for their claims for fraudulent inducement, statutory fraud, negligent misrepresentation, or breach of warranty. ROA.25-20428.547. Thus, the Panel was signaling that there was no intentional conduct that led to the Glovers' damages. ROA.25-20428.547. The Glovers' damages related solely to an allegedly negligent home construction performed by Frontier. ROA.25-20428.547. Given those established facts, Kinsales' duty to indemnify depends on whether the damages caused by Frontier's allegedly negligent conduct are covered by the terms of the policy. *D.R. Horton*, 300 S.W.3d at 744.

---

[8] The Glovers were also awarded attorney's fees in the amount of $147,000.00, and costs for the arbitration proceeding in the amount of $8,456.00. The total amount awarded to the Glovers was $213,314.09. ROA.25-20428.547.

### a. The Evidence Was Sufficient To Support Coverage And Establish Kinsale's Duty To Indemnify Frontier. Frontier Need Not Segregate Damages To Trigger Kinsale's Duty To Indemnify.

Kinsale argued below that Frontier failed to "demonstrate which, if any, of the damages awarded in the Arbitration are for covered damages…" ROA.25-20428.279. Yet, an insured is only required to segregate claims if concurrent causation exists. *Landmark Partners, Inc. v. W. World Ins.*, No. 02-23-00116-CV, 2023 WL 8940812 at *2 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.). Concurrent causation refers to when covered and noncovered events combine to cause damage. *Id*. Here, there was no dispute as to how the damage occurred on the Glover property. The AAA awarded the Glovers damages for the defects which occurred during the construction of their home. ROA.25-20428.544-547.  There was no finding of any other contributing cause.  Therefore, because there is no issue of concurrent causation, Frontier was not required to segregate damages.

### b. The Evidence Developed In The Underlying Hearing Raised Genuine Issues Of Material Fact As To Kinsale's Duty To Indemnify Frontier.

Here, Kinsale had a duty to indemnify Frontier when considering the rationale discussed *supra* regarding Kinsale's duty to defend, in conjunction with the facts established in the Underlying Arbitration. The AAA found in favor of the Glovers and against Frontier at the close of the arbitration proceeding by awarding them damages, which included attorney's fees. ROA.25-20428.547. The **damages were**

32

**awarded for the construction issues and/or defects at the property**. ROA.25-20428.541-548. The arbitrators did not award the Glovers any damages based upon their fraudulent inducement, statutory fraud, or negligent misrepresentation claims. *See* ROA.25-20428.541-548. Frontier was adjudicated to be legally responsible through the arbitration proceeding against the Glovers, which triggered Kinsale's duty to indemnify Frontier. ROA.25-20428.541-548. Kinsale denied Frontier coverage under the policy even though the "property damage" to the Glovers' home met the definition of an "occurrence" (*i.e.*, "…an accident, including continuous or repeated exposure to substantially the same general harmful conditions" ROA.25-20428.312) under the policy and occurred during the policy period.

### 3.    *Exclusion 2.J(1) And 2.B Of The Insurance Policy Did Not Bar Coverage To Frontier.*

As discussed *supra*, the claims and damages asserted in the Underlying Arbitration fall squarely within the Policy's coverage and do not trigger any exclusions. In particular, exclusion 2.j.(1) has already been addressed in the duty to defend section *supra*, and for the same reasons outlined there, it does not apply here. Kinsale also contended that exclusion 2.b.—titled "Contractual Liability"—barred coverage based on Frontier's obligations to the Glovers under the Amended Residential Earnest Money contract that was executed following mediation. ROA.25-20428.549-550. Kinsale argued that the amendment required Frontier to assume liability beyond those ordinarily owed under common law which precludes

it from indemnifying Frontier. ROA.25-20428.280. But this is simply not true and is a mischaracterization of the executed Amendment. *See* ROA.25-20428.280. The amendment simply provides that Frontier would correct the construction-related issues identified by the Glovers and that the Parties would work toward a resolution of the listed issues for substantial completion. *See* ROA.25-20428.280. There is no assumption of new or greater liability, but rather a restatement of Frontier's obligations as the builder.

Texas law has made clear that exclusion 2.b. does not apply when an insured enters an agreement to complete its work in a good and workmanlike manner as this does not add anything to the obligation an insured has under general law to comply with the contract's terms, liability exists independently of the contract. *Ewing*, 420 S.W.3d at 37-38 (Tex. 2014). Here, the amendment to the Residential Earnest Money contract did not in any way enlarge Frontier's obligations or alter the nature or scope of its liability to the Glovers. Therefore, exclusion 2.b. does not apply here. The Trial Court erred and committed a manifest error in finding otherwise. Reveral and remand are not only proper but required.

### 4.    *The Fungi Or Bacteria Exclusion Endorsement Was Not Relevant Because Frontier Did Not Seek Recovery For Fungi Or Bacteria.*

Kinsale also argued that no coverage was afforded due to the fungi or bacteria exclusion which was irrelevant here because Frontier did not seek coverage for fungi or bacteria. ROA.25-20428.281

34

### 5.    *The Absolute Pollution Exclusion Endorsement Was Not Relevant Because Frontier Did Not Seek Coverage For Mold.*

Kinsale further argued that no coverage was afforded due to the Absolute Pollution Exclusion which was likewise irrelevant here because Frontier did not seek coverage for mold or pollutant exposure. *Id*.  The facts, as established in the underlying suit, raised genuine issues of material fact as to whether Kinsale had a duty to indemnify Frontier. The Trial Court's grant of summary judgment was an abuse of discretion. This Court should reverse the judgment of the trial court and remand this case for further proceedings.

### 6.    *Genuine Issues Of Material Fact As To Frontier's Remaining Claims Precludes Summary Judgment.*

The Trial Court also found that Frontier could not recover extra-contractual damages without a viable breach of contract claim and could not maintain a claim under Chapters 541 or 542 of the Texas Insurance Code or the DTPA. ROA.25-20428.754-757; ROA.25-20428.877-878. To support its finding, the Trial Court cited *USAA Tex. Lloyds Co. v. Menchaca* in which the Texas Supreme Court held that an insured could not recover policy benefits as damages for an insurer's extra-contractual violations where the insured did not have a right to those benefits under the policy. 545 S.W.3d 479 (Tex. 2018). As has been shown *supra*, Frontier has a right to those benefits under the Kinsale Policy and, as such, should also be entitled to damages for extra-contractual violations as well.

35

As discussed, there are genuine issues of material fact as to whether Kinsale owed Frontier a duty to defend and/or indemnify as to the damages and claims in the Underlying Arbitration award which should have precluded summary judgment. The existence of Kinsale's duty to defend and/or indemnify affects whether Frontier may recover extra-contractual damages incurred by Kinsale's statutory and common-law violations. *See id.* at 497 ("First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits. Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits.").

The existence of Kinsale's duty, however, is not determinative. Frontier may recover benefits as actual damages under the DTPA where Kinsale misrepresented the policy's coverage and that misrepresentation caused Frontier's damages. *See* TEX. BUS. & COM. CODE § 17.46(B)(5), (12); TEX. INS. CODE § 541.061(3)–(5); *see also Menchaca*, 545 S.W.3d at 497.[9] Regarding the Trial Court's finding that Frontier could not recover extra-contractual damages without a viable breach of contract claim, Texas law makes clear that Frontier's claim for extracontractual

---

[9] Frontier's claims under the Texas Insurance Code and DTPA incorporated claims that Kinsale misrepresented its policy coverage and the misrepresentation caused Frontier's damages. ROA.25-20428.187-193.

damages is distinct and independent of its breach of contract claim. *See Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) ("[A] breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract.").

Even if Frontier is unsuccessful in establishing that Kinsale breached the contract, Frontier may still recover damages under the Insurance Code where Kinsale's statutory violation (1) caused Frontier to lose its contractual right to benefits under the insurance policy and/or (2) caused Frontier injury independent of the loss of policy benefits. *See Menchaca*, 545 S.W.3d at 489. Moreover, even if Frontier's breach of contract claims were barred due to payment of the alleged appraisal award, which did not occur here, such payment does not, as a matter of law, bar Frontier's claims under the Prompt Payment Act. *See Ortiz*, 589 S.W.3d at 135. As a result, genuine issues of material fact continue to exist.

The June 30th Memorandum Opinion along with the Trial Court's denial of Frontier's Rule 59(e) Motion manifests an improper application of Texas law. *See* ROA.25-20428.754-757. The Trial Court's Memorandum Opinion and denial of Appellant's Rule 59(e) Motion wholly fails to address or otherwise examine Frontier's claims independent of its breach of contract claim. ROA.25-20428.754-757; ROA.25-20428.877-878. As a result, there are genuine issues of material fact as to: (1) whether Kinsale breached its duty of good faith and fair dealing; (2)

Frontier's claims under Texas Insurance Code § 541.060; (3) whether Kinsale violated the Prompt Payment Claims Act; (4) whether Kinsale violated the Texas Deceptive Trade Practices Act (DTPA); and (5) whether Frontier is entitled to attorney's fees.

The denial of Frontier's Rule 59(e) Motion for Reconsideration in light of such clear errors constitutes manifest error and requires reversal. This Court should reverse the judgment of the trial court and remand this case for further proceedings.

## CONCLUSION AND PRAYER

This Court should reverse the Trial Court's order and judgment granting Kinsale's Motion for Summary Judgment. The Trial Court improperly granted Kinsale's Motion for Summary. The judgment was manifestly improper and should be reversed and this case should be remanded back to the trial court for further proceedings.

Respectfully submitted,

**CONÉ PLLC**

By: */s/ Misty Annette Hataway-Cone'*
Misty Annette Hataway-Coné
State Bar No. 24032277
Misty@conepllc.com
Coné PLLC
2019 Washington Avenue, Suite 201
Houston, Texas 77007
Phone:  713-955-2729
**ATTORNEY FOR APPELLANT**

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2026, I sent a true and correct copy of the above and foregoing Brief by service electronically through the Court's ECF System upon the following:

Alicia K. Christopher
Cozen O'Connor
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335


*/s/ Misty Annette Hataway-Coné*
MISTY ANNETTE HATAWAY-CONÉ

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 8673 words, excluding the parts of the brief exempted by FED. R. APP. P. 32 (a)(7)(B)(iii), (f).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman with 14-point type for text and 12-point type for footnotes.

/s/ *Misty Annette Hataway-Cone'*
Misty Annette Hataway-Coné
**Counsel for Appellant**
**Frontier Custom Builders, Inc.**